IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 SEP 28 PM 3:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

TONY EUGENE GRIMES,

    PLAINTIFFS,

v.                                          CASE NO.: CV-99-J-730-S

BILLY MITCHEM, et al.,

    DEFENDANTS.

## MEMORANDUM OPINION

Currently pending before the court is the defendants' Special Report (doc. 33) which was converted by the court to a motion for summary judgment (doc. 34). The plaintiff responded (doc. 39) and all parties have submitted evidence in support of and in opposition to the motion. The court having considered said motion and argument, the court makes the following findings of fact and conclusions of law.

### I. Factual Background

The court finds the facts of this case, in the light most favorable to the plaintiff, to be as follows: The remaining claims of the plaintiff's amended complaint assert that he had photographs and letters taken from him in retaliation for complaining to the prison chaplain after some of the defendants interfered with the Nation of Islam and Ramadan festivities in December, 1998 (Counts I and II), and that he was placed in segregation in retaliation for reprimands the defendants received from the prison chaplain after the plaintiff told the

40

chaplain that the defendants were interfering with his religious freedoms (Count II).[1] The plaintiff also complains he was denied lunch while in segregation (Count V). The plaintiff also asserts that after his photographs and letters were taken from him, including one letter containing sixty dollars worth of postage, he was taken to the prison barber shop and beaten before being taken to the infirmary prior to being placed in solitary.

The defendant asserts that contraband (being a female purple g-string, Murry Hair grease, 21 photos of tattooed body parts and letters from someone not on his mailing list) was removed from the plaintiff's cell on December 27, 1998[2] and the plaintiff was taken to the infirmary for a "body chart" before being placed in solitary confinement for possessing contraband. The infirmary records show no bruises, bleeding, broken bones, or other injuries to the plaintiff at the time.[3] The defendants assert that the beating simply never occurred and that the plaintiff was disciplined for making this false statement. Special Report at 3-4. The defendants further argue that no evidence of excessive force exists other than the plaintiff's unsupported allegations. Special Report at 5-6. The plaintiff submitted an affidavit from another inmate stating he saw this beating occur.

---

[1] The plaintiff is imprisoned at W.E. Donaldson Correctional Facility. The Magistrate Judge to which this case is assigned previously entered a Report and Recommendation after which this court entered an Order dismissing some of the plaintiff's claims (docs. 17 & 18).

[2] *See* affidavit of defendant Willis.

[3] These claims are made by plaintiff in Counts 1, 3, 4 and 5 of his amended complaint.

Defendants argue that no evidence of retaliation exists and that plaintiff's claim is insufficient to state a § 1983 claim because the plaintiff states no facts in support of his allegation of retaliation.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

### III. Legal Analysis

#### A. The Excessive Force Claim

The plaintiff alleges that after items were confiscated from him, he was taken to the barber shop and beaten, then taken to the infirmary before being placed in segregation. Infirmary records from that date show the plaintiff stated "I got jumped on," "I was hit

4

across the head," "I was hit across the ribs," and that "I was hit in the groin." This record reflects that the plaintiff was taken to the infirmary on this occasion for a "body check" before being placed in segregation. The examining nurse noted no bleeding and no broken or bruised areas. The nurse further recorded that the plaintiff refused an examination of the groin area.

Even if this court accepted the plaintiff's allegation of beating as true, the plaintiff still must show that the force in question was applied maliciously or sadistically for the very purpose of causing harm and not applied in a good faith effort to maintain or restore discipline. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir.1999); citing *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct.1078, 1084, 89 L.Ed.2d 251 (1986) (only "unnecessary and wanton" infliction of pain are prohibited by the Eighth Amendment). *See also Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (applying the *Whitley* standard to all claims of excessive force in a prison context).

The plaintiff submits an affidavit from another prisoner, LaCarl Elgotto Bolling, stating he witnessed Officer Willis hit the plaintiff with a baton in the head, saw Officer Carter hit the plaintiff with a baton in the ribs and chest and saw Officer Arthur stomp on the plaintiff's groin area. The defendants submit evidence in the form of a Disciplinary Report stating that, after hearing, the plaintiff's allegation of this beating were proved to be untrue.[4] The plaintiff was found guilty of making false statements and given forty-five days segregation in addition to the loss of other privileges.

---

[4]The plaintiff refused to attend this hearing.

The court finds that even if the affidavit of Bolling were taken as true, the court finds that a beating with batons which leaves no mark whatsoever does not rise to the level of "physical injury" required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e). This would not be considered more than *de minimus,* which numerous cases hold is insufficient to constitute "cruel and unusual punishment." *See e.g. Hudson v. McMillian*, 503 U.S. at 5, 112 S.Ct. 995; *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997).

The Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *See Hudson v. McMillian*, 503 U.S. at 5, 112 S.Ct. at 998; *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). In excessive force cases, "the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 999. Assuming the alleged beating occurred, while significant injury is not required, a claim ordinarily cannot be predicated upon a *de minimus* use of physical force. *See id.* at 9-10, 112 S.Ct. at 1000. Thus, not every malevolent touch by a prison guard violates a prisoner's constitutional rights. *Id.* at 9, 112 S.Ct. at 1000; citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).

The court finds that even if force was actually applied here, it is the kind of *de minimus* use of force that does not constitute cruel and unusual punishment. The complete lack of any bruising, broken bones or bleeding on the plaintiff leads the court to this conclusion. *See DeWalt v. Carter*, 224 F.3d 607, 619-20 (7th Cir.1999).

## B. The Retaliation Claim

The plaintiff asserts that items were taken from him in retaliation for his complaints to the prison chaplain concerning some of the defendants interfering with his Nation of Islam activities. The only possessions plaintiff mentions are photographs and letters from his family, one letter containing sixty dollars worth of postage stamps. Defendant Mitchem states by affidavit he knows of no postage stamps that were taken from plaintiff and that postage stamps are not contraband. Defendant B. Willis states by affidavit he was instructed by defendant Carter to retrieve any photos that looked suspicious as to certain body parts with tattoos and that he took 21 photos of "just body parts" from the plaintiff. The prison chaplain states he has never reprimanded anyone for harassment against the plaintiff or the Nation of Islam.

The plaintiff responds that the chaplain did too reprimand some of the defendants after which he was threatened with retaliation by these defendants.[5] The plaintiff also contends that the letters and photos were from or of his family. An affidavit by another inmate states that he too is a member of the Nation of Islam and that officers "interfered with their religious program," that he saw the plaintiff go to the chaplain and complain about the interference and saw the plaintiff called to Capt. Myer's office after this.[6]

---

[5] The court is aware of the hearsay nature of this allegation.

[6] Inmate Bolling's affidavit states plaintiff's mail was torn up and that his meals were poured on the floor (apparently while he was in segregation) and that the meals on the floor just piled up. However, as the plaintiff does not make allegations that these events occurred, the court does not consider this evidence as relevant to the issues before it.

7

In order to establish retaliation, the plaintiff must show that some adverse action was taken against him. The plaintiff asserts he was beaten, *see supra*, that the possessions in question were taken from him, and that his right to practice his religion was infringed. He does not complain that his placement in segregation was a retaliatory action.

The plaintiff asserts that his complaints to the prison chaplain caused the chaplain to reprimand guards for interfering with the plaintiff's right to practice his religion and that the reprimand caused the guards to retaliate against him.

Clearly, even if the photographs and letters in question were as plaintiff claims them to be (of and from his family), one has no constitutionally protected interest in possessing photographs or letters. Furthermore, there is no evidence that the officers named retaliated against the plaintiff because the plaintiff complained to the chaplain who then reprimanded these officers. The chaplain states this just is not true. If the chaplain never reprimanded the defendants, those defendants had no reason to retaliate against the plaintiff.

In *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998), the court applied the following three-part definition of retaliation: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Id.*

As the plaintiff bases his entire argument of retaliation on the chaplain's reprimand of certain officers, and the chaplain denies any such reprimand ever occurred, this court can

8

find no evidence of infringement of the plaintiff's constitutional rights. Specifically, the court finds that the facts alleged and evidence produced do not meet part three of the standard stated under *Bloch*. Additionally, the plaintiff's allegation that retaliation was behind the taking of his letters and photographs does not state an infringement of plaintiff's constitutional rights. *See Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) ("There is, of course, a de minimus level of imposition with which the Constitution is not concerned."). The court also notes from the affidavits of the defendants that, regardless of the plaintiff's religion, the items taken from him would still have been taken as they were prison contraband. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir.1999) ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment").

### C. Lack of Lunches

The plaintiff also complains he was only fed two meals a day while in segregation. He offers no evidence that he lost weight, or that the meals provided did not fulfill his dietary needs. Defendant Freeman states by affidavit that prisoners in segregation only get two meals per day pursuant to administrative regulations.

Prison officials have a duty to provide humane conditions of confinement and ensure that prisoners receive adequate food, clothing, shelter and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). While prisons need not be comfortable, they may not be inhumane. *Id*.

To establish a 42 U.S.C. § 1983 claim regarding food, the plaintiff must show that the food was of insufficient nutritional value to preserve health. *Hamm*, 774 F.2d 1567, 1575 (11th Cir.1985). The plaintiff has wholly failed in this burden. "Only those deprivations denying 'the minimum of civilized life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000.

## V. Conclusion

In accordance with the above finding, it is therefore **ORDERED** by the court that the defendants' motion for summary judgment be and hereby is **GRANTED** on all counts of the plaintiff's complaint. This case is **DISMISSED WITH PREJUDICE**, each party to bear its own costs.

**DONE** and **ORDERED** this the 28 day of September, 2001.

_____
UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON